NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

CHALLENGE FINANCIAL SERVICES, INC., *Plaintiff/Appellee*,

*v.*

WHOLESALE INVESTMENTS, INC., et al., *Defendants/Appellants*.

No. 1 CA-CV 24-0833

FILED 07-29-2025

Appeal from the Superior Court in Maricopa County
No. CV2023-016264
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

The Cavanagh Law Firm, P.A., Phoenix
By David Brnilovich, Karen Stafford
*Counsel for Plaintiff/Appellee*

The Collins Law Firm, PLLC, Mesa
By Ernest Collins Jr.
*Counsel for Defendants/Appellants*

## MEMORANDUM DECISION

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Michael J. Brown and Judge Paul J. McMurdie joined.

**F O S T E R**, Judge:

¶1            Defendants Wholesale Investments, Inc., doing business as Wii Auto Sales ("Wholesale" or "Guarantor"), its President Jorge Fernandez and its Vice-President Howard Simsovits (both together, "Dealer") appeal the superior court's grant of summary judgment in favor of Plaintiff Challenge Financial Services, Inc. for breach of contract. For the following reasons, the judgment is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2            This Court "view[s] the evidence in the light most favorable to the party against whom summary judgment was entered." *Gilmore v. Gallego*, 258 Ariz. 38, 42, ¶ 16 (2024) (quotations omitted).

¶3            Wholesale operates a motor vehicle dealership where customers can purchase vehicles through monthly installment payment plans. In August 2022, the parties entered a Dealer Agreement allowing Challenge to purchase retail installment contracts and security agreements that Wholesale entered into with its customers. It included a buyback provision that allowed Challenge to demand that Wholesale repurchase a retail installment sale contract if the purchaser defaulted on the contract.

¶4            A few months later, Edward Mendoza purchased a vehicle from Wholesale through a retail installment sale contract (the "Mendoza Contract"), agreeing to make monthly payments of $468.63, beginning on November 18, 2022. Challenge purchased the Mendoza Contract pursuant to the Dealer Agreement, and Mendoza failed to make his first monthly payment. A month later, and for reasons that are not evident from the record, a representative from Challenge sent the following text message: "Need to grab a check for . . . Mendoza - $468.63[.] Need payment . . . today." Wholesale delivered the check as requested. In April 2023, Challenge demanded that Wholesale repurchase the Mendoza Contract, but Wholesale did not do so.

¶5    Several months later, Challenge sued for breach of the Dealer Agreement. Following discovery, Challenge moved for summary judgment, and after considering briefs and oral argument, the court granted it. Wholesale timely appealed.

¶6    This Court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

¶7    Wholesale contends that the court erred in granting summary judgment because Challenge "materially breached the Dealer Agreement," thereby discharging Wholesale's obligation to perform by repurchasing the Mendoza Contract. *See Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 133, ¶ 33 (App. 2012) ("[A]n uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract."). Wholesale argues Challenge breached the Dealer Agreement by demanding (1) same-day payment; (2) payment on Mendoza's behalf; and (3) that Wholesale perform under "business compulsion."

¶8    This Court reviews summary judgment rulings and contract interpretations *de novo. Gilmore*, 258 Ariz. at 42, ¶ 16 (summary judgment); *Terrell v. Torres*, 248 Ariz. 47, 49, ¶ 13 (2020) (contract interpretation). In a breach of contract action, a plaintiff must establish "the existence of the contract, its breach and the resulting damages." *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, ¶ 16 (2013) (quotation omitted). "Summary judgment is appropriate if, from the pleadings, depositions, answers to interrogatories, requests for admissions, and affidavits [there is] no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Angus Med. Co. v. Digit. Equip. Corp.*, 173 Ariz. 159, 162 (App. 1992); *see* Ariz. R. Civ. P. 56(a).

¶9    When interpreting contracts, courts "seek to discover and effectuate the parties' expressed intent" based on the entirety of the contract. *Terrell*, 248 Ariz. at 49–50, ¶ 14 (citation omitted). Courts "construe the provisions according to their plain and ordinary meaning, unless it can be shown that the parties intended a special meaning." *Id.* at 50, ¶ 14 (cleaned up).

**I.      The Dealer Agreement provided for acceleration of payment.**

**¶10**          Wholesale argues that Challenge breached the Dealer Agreement when it demanded a same-day payment.

**¶11**          Section 14 of the Dealer Agreement addresses customer defaults and Challenge's demands for Dealer to repurchase contracts:

> A CONTRACT shall be deemed a payment default when the payment or any part thereof or any obligation on the part of the CUSTOMER has not been received or performed within fifteen (15) days of the due date specified in the CONTRACT. In the event of CUSTOMER default herein, DEALER at the sole option of CHALLENGE shall repurchase the CONTRACT from CHALLENGE for the current PAYOFF BALANCE (heretofore defined) on the CONTRACT within ten (10) days of written or verbal demand by CHALLENGE upon DEALER.

Wholesale asserts that Challenge's communication demanding a check "today" violated the ten-day grace period in this section for payments after a customer defaults. But the language in the agreement does not support Wholesale's argument.

**¶12**          The ten-day grace period only applies when "DEALER . . . repurchase[s] the CONTRACT . . . for the current PAYOFF BALANCE." The Dealer Agreement specifies that the payoff balance includes "the current principal balance" along with associated fees and costs. Thus, although Challenge could have demanded the payoff balance, which was around $19,000 at the time, it only demanded $468.63. Because the demand was not for the Payoff Balance, the ten-day grace period did not apply.

**¶13**          Furthermore, Section 25 provides that:

> CHALLENGE shall have the right to alter, accelerate or change the time or manner of payments of any debt or any part thereof, or to add or release any other GUARANTOR OR GUARANTORS. Such action may be taken by CHALLENGE with or without notice to GUARANTOR, and shall not affect GUARANTOR'S liability in any manner, as long as this guaranty is in effect.

Section 25 does not supersede Section 14's right to repurchase but instead supplements it. *See C & T Land & Dev. Co. v. Bushnell,* 106 Ariz. 21, 22 (1970)

("[I]t is axiomatic that any agreement must be construed as a whole, and each part must be read in light of all the other parts." (citation omitted)). Under the plain language of Section 25, Challenge had every right to demand same-day payment. Wholesale agreed to this term and should have been aware of it. *In re Henry's Estate*, 6 Ariz. App. 183, 186 (1967) ("[A] person who is competent is held as a matter of law to know the contents of an agreement he signs."). The plain language of the Dealer Agreement supports that no genuine issue of material fact exists as to whether Challenge's demand breached the agreement.

**II.     Section 8 of the Dealer Agreement solely benefited Challenge and could be waived.**

**¶14**     Wholesale also argues that it paid the amount Challenge demanded on Mendoza's behalf, which violated Section 8 of the Dealer Agreement. Section 8 states that:

> DEALER hereby covenants, warrants and represents that the amount shown on the CONTRACT as received as "Down Payment" was actually paid in cash by CUSTOMER, that DEALER did not assist CUSTOMER in getting a loan for all or part of the down payment or any other CONTRACT payment, that DEALER gave at least the fair market value for any trade-in on CONTRACT, and that none of the credits shown for the trade-in value was paid by DEALER.

Citing *Pruitt v. Pavelin*, 141 Ariz. 195, 204 (App. 1984), Challenge counters that Section 8 is a provision for the sole benefit of Challenge and therefore it could choose not to enforce the provision. *See Pruitt*, 141 Ariz. at 204 ("[A] party may waive any provision of a contract intended for his sole benefit.").

**¶15**     Wholesale asserts that whether Challenge waived Section 8 by its conduct is a question of "fact for a jury to decide." But even when factual questions remain disputed, summary judgment is proper if the ultimate question turns on the application of law. *See* Ariz. R. Civ. P. 56(a); *Northen v. Elledge*, 72 Ariz. 166, 170 (1951) (summary judgment was proper when "there were some issues and facts in dispute[ that] were in no sense controlling and their resolution . . . could not possibly affect the final result of the action").

**¶16**     Here, the plain language of Section 8 confirms Wholesale's commitment that it would not financially assist Mendoza in purchasing the vehicle. It does not confer any benefit or right to Wholesale, only an obligation. In contrast, Section 8 benefits Challenge by safeguarding

Challenge's collection of payment through Wholesale certifying the customer's ability to pay. Because Section 8 was for Challenge's sole benefit, Challenge could waive that provision without breaching the Dealer Agreement. *See Pruitt*, 141 Ariz. at 204. But, as discussed, even if Challenge did not waive Section 8, Section 25 still grants it "the right to alter, accelerate or change the time or manner of payments."

¶17         Although Wholesale attempts to create a genuine issue of a disputed material fact regarding Challenge's waiver of Section 8, the plain language of the Dealer Agreement authorized its demand of $468.63.

### III. The Dealer Agreement negates Wholesale's business compulsion argument.

¶18         Finally, Wholesale also suggests Challenge's demand constituted "'business compulsion' and duress." But because the demand was allowed under the Dealer Agreement as discussed herein, it was not business compulsion. *See Colvin v. Superior Equip. Co.*, 96 Ariz. 113, 120 (1964) ("The doctrine of 'business compulsion' is merely the modern form of the common law doctrine of duress. It must be shown that the person claiming 'business compulsion' agreed to an illegal exaction."). Here, the Dealer Agreement provided for collection of past-due amounts and acceleration of payments. Wholesale failed to abide by the agreed-upon terms. Because Wholesale did not provide any affirmative defenses to overcome summary judgment, and the record presents no genuine issues of material fact, the court did not err by granting summary judgment in favor of Challenge.

### IV. This Court awards Challenge its attorneys' fees and taxable costs.

¶19         Challenge seeks its attorneys' fees incurred on appeal pursuant to the Dealer Agreement. Based on Sections 16 and 30 of the Dealer Agreement, this Court awards Challenge its reasonable attorneys' fees, plus taxable costs, upon compliance with Arizona Rule of Civil Appellate Procedure 21. Ariz. R. Civ. App. P. 21; A.R.S. § 12-341.

## CONCLUSION

¶20     For the reasons above, the court's order is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR